Good morning. My name is Donovan Dunyon. I represent Don Jackson. Could you pull the microphone a little closer? Thank you very much. Absolutely. Thank you, madam. The case of Don Jackson is unusual in that it comes to us for sentencing on a case that was back in 2005. Subsequent behavior resulted in the case being dragged out a significant amount of time. At the sentencing for the last probation violation, which was a sentencing that was on stipulated counts, all the counts were stipulated, the court heard the stipulations. In fact, several times it was mentioned what the counts were that were dismissed and what the counts were that were stipulated to. The guideline range was 8 to 14 months. Our position is that the court should have considered something other than guideline range and should have at least heard counsel relative to this. The record that's been submitted to the court is replete with the idea that, unfortunately, sometimes when defense counsel say we have the last word, that last word is yes, your honor, and that was the case here. Counsel was not allowed to present the case in an appropriate fashion. He was not allowed to argue. Subsequently, and 14 months was issued after the court inquired of the prosecution, what do you want, and the prosecution said, well, 14 months, and then that was it. There was no other hearing. There was nothing else. And counsel points out in his documents that. Where is the error? Your honor, the court should give specific reasons or should show a basis for the adoption of a sentence in a case. When he adopted the 14 months, which was on the outside of the guideline range, then one would presume that it's appropriate for the court to give some rationale why that sentence is being given or at least give counsel some way to look at it. That wasn't done. And to say that given the amount of materials that were provided to the court in this case, which is overwhelming, and this case is, to say this case is unusual is minimizing it. This is a case. My client was an Eagle Scout, and I looked that up, and his mother has the documentation through Life Scout, which is one before Eagle. My client informs, he was an Eagle Scout. Coming from a scouting background, that means a lot to me, and it gives me an insight into his personality and the idea that the one criminal behavior came down. Now, what the court didn't take into account, what the court didn't look at, was somebody comes out of custody after a case like this or after any case, and they're virtually unemployable. We find that problem where retraining is needed, justification for having some sort of employability training given to somebody. You know, I thought you might talk to us about the house arrest and whether it should be credited. He did have 109 days of house arrest, didn't he? He did, and under the guidelines. And he did serve it. And when the judge sentenced him, it appears that he didn't take that into consideration. Now, maybe he didn't have to. I agree with the court. You're not talking to us about that. Well, I would have gotten to that, Mr. Justice, I would have gotten to that. And that is the case, that he had a significant amount of time, not just in home confinement, but home confinement with an electronic device, which makes the difference under the current sentencing parameters now. Should that be counted for him? Yes, it should. And should the court have accounted for that? Should the court have been more specific? Yes. Well, that's the difficulty I have is how the court can account for that, because what he's being sentenced for is the most egregious of his violations, and that's what gets him the 8 to 14 months. And as I understand it, the house arrest was for the less egregious violations, and the court is not permitted, really, to credit that. So how is it you think it works into the sentencing calculus? The court certainly should have taken into account that. And when counsel was allowed at the very last minute to say, may we please have credit for all time, yes, you'll get credit for time served. It wasn't specifically requested that he get that. It wasn't requested. It said it was noted. I mean, at the end they said, well, it's noted. He's done with the sentencing, and then counsel says about the 109 days. So I guess my concern is this, which wasn't clear to me from your brief, is that he's not being double sentenced. He, the, whether the Bureau of Prison wants to, you know, make a recalculation is up to the Bureau of Prisons, but he's basically sentenced within the guideline range for the offense that was the highest level. And so he falls within the guideline range. So then what's the problem with that? The problem is this. When someone is, when the person before the court is of a particularly vulnerable or a particular sensitive nature, in this case, I represent a young man who would like to save the use of his left arm. Left arm was damaged as a result of doing. Now, what's the problem with, where, so far you've identified one error, I think, which is, in your view, the district court didn't give reasons. Are there any other errors by the district court? Yes, ma'am. Okay. Because that's what we have to focus on. Well, there was a subsequent motion to modify, filed, to allow just this, to allow us to be able to present the evidence of a young man who was receiving 5K1 benefits for having allowed the conviction of a cop killer through his testimony, something he knew was incredibly dangerous, something which resulted in a hit going out on him. We understand that, but to follow up on Judge McGinn's question, what you're at least asking in your briefs is that your client be credited for the time he served on home confinement. Indeed, that's part of it. But the question is, was Judge Reel required to do that? Is there any guideline or any case that required him to do that? Maybe I would have done it, maybe Judge Ferris would have done it, but that's beside the point. Was he required to do it, and if so, what was the source of the requirement? The judge is required to do a few things. However, in this case. I'm not sure of that. Well, in this case, he was required to examine the data that was behind it. We have a young man who is permanently injured for the rest of his life, suffering the potential loss of his left arm, not receiving therapy at this time. He's a man who came out of custody unable to get a job, so he sells himself to a friend and says, I can make us good money, and they sell DirecTV. This young man always wore a DirecTV shirt around because he was so proud of his business. He was making six figures a year. This is not reflected in any probation report. This is something we should have been able to present to the court. We should have been able to show the positive aspects of this. Where is it that in the transcript we look to show that Mr. Sadat was his counsel? Mr. Sadat was his counsel. Where was Mr. Sadat precluded from making these arguments? The judge precluded him from doing that. Where? The transcript shows. Well, I'm reading the transcript, so I'm asking you to tell me where in the transcript. He was not allowed to comment further. The case was shut down. He had to shout out his last request, and that was it. This was beyond a difficult situation. Well, I mean, Mr. Sadat's saying things like, oh, two last things. We have the custody, and we think that should be reflected. They talk about the surgery and the delay. I'm having a hard time seeing where Judge Reel shut down any discussion. Now, maybe the fact is Mr. Sadat didn't do a good job in putting it before the court, but I don't see where he was shut down. I think just to the contrary, reading his briefs, I see Mr. Sadat's information he gave the court was. No, my question is fairly straightforward, and that is where in the sentencing transcript do I see Mr. Sadat being shut down? At the end of the discussion with the court. The court indicated what the sentence would be and cut off discussion further. Thank you. You want to save the remaining time? Shall do. Thank you. Good morning, Your Honors, and may it please the court. My name is Keith Ellison, and I represent the United States. I was also the AUSA at the supervised release revocation hearing underlying this appeal. Just briefly to comment on the last thing the court was discussing, I don't believe the defense argued in its opening brief that he was precluded from argument at any point, but there are two things that I think that it's helpful to start off clarifying. First of all, this was a sentencing hearing. The defendant had previously admitted his violations, and the reason we put it over for a sentencing hearing was for the defense to be able to file a sentencing position. Both the government and the defense file sentencing positions. The defense sentencing position, which discusses many of these factors that the defense was just talking about, is found in the defense's excerpts of records, Volume 2. Then going to house arrest, I think it's helpful to clarify the posture with what ended up with this 109 days. If the court looks at the transcript, we'll see that Mr. Sadat was requesting 81 days. There's some confusion as to what happened here. In January of 2018, the defendant appeared before the district court for two other alleged violations of supervised release. These are found in the record. It's described in ER 48 and the clerk's record at 74. The defendant had failed to report for drug counseling and submitted a positive test for cocaine use. At that hearing, the defendant admitted those violations. The district court imposed a condition of home detention and continued Mr. Jackson on that current term of supervision. A week or two after that, he was the victim of a shooting. At the probation officer's request, home confinement and drug counseling were suspended while local law enforcement investigated that shooting. In June of 2018, the defendant came before the district court for four new violations of supervised release. At this hearing, he admitted two of those, denied two of those, and the district court set it for an evidentiary hearing on the two denied violations. Prior to a hearing on the denied violations, the government and the defense stipulated to a request to stay proceedings and held them in advance while those state court violations were resolved. At that time and as part of that stipulation, there was 109 days remaining from the previously imposed period of home confinement for the separate violations. So the government and defense stipulated that as part of the request to stay proceedings, that those 109 days remaining would be reimposed as a condition of the request for the stay. Fast forward a few months, those four allegations from the June 2018 hearing were still out there. And in January, the probation officer filed a new petition for revocation of supervised release because the defendant had eight additional violations of the terms and conditions of his supervision. So now we have 12 outstanding, two he had previously admitted in June. When he first appeared before the magistrate judge, the magistrate judge imposed home confinement restriction, or excuse me, location monitoring with a residential restriction as a condition of his release pending his final revocation hearing. And so I think those two things were confused by Mr. Sadat in the underlying hearings and in defense counsel in its opening brief. But at no point in time was defendant sentenced for these 12 outstanding violations. We understand that. I think one of the best arguments Mr. Dunyon makes, however, is that the district court offered no explanation for why he picked the top end of the guideline range or why he was sentencing as he did. What is the government's response to that? Your Honor, I think certainly the government would concede that it would be much easier standing in front of the court if the district court had said more. Not more, but something. Or something. Anything. But if the court looks, and I think I have two responses to that. First, if the court looks, the record as a whole reflects a rational and meaningful consideration of the applicable 3553 factors. First, the defendant had spent the better part of a decade violating the terms and conditions of his supervised release. This was the third time in about a year's period where he was in front of the district court for these violations. But one of the difficulties is that we could divine that if we ourselves were trying to figure out what the sentence was and why one might sentence him at the top of that range. But we don't have anything from the judge on that point, and we have a case law that basically says you have to offer. You don't have to, you know, write a novel, but you do have to say something. And I don't see anything here as to why it was sentencing him to the 14 months. And, of course, if we look to the Cardi case, which the defense relies on heavily in his opening brief, it does say, and this also is reflected in the Supreme Court's decision in Rita v. United States, that when the defense requests or when a party requests a sentence separate in part from what the district court ultimately imposes, the district court should give a greater explanation. But both of those cases talk about how only without... And he wanted actually just home detention way lower than... So he offered an alternative for the judge, and the judge didn't buy that alternative. But we don't know why. Correct. But in both of those cases, it talks about how the district court only needs to do these things if that request is non-frivolous. And it's the government's position that when you look at the record as a whole, that was a frivolous request, that the defendant's conduct didn't earn him a sentence below what the district court ultimately imposed. And as the Cardi case, as the court in the Cardi case mentioned, it's unclear what defense thinks would have happened had the district court said more. This was a very reasonable sentence under the circumstances. He was before the court being sentenced or, excuse me, for six violations of the terms and conditions of his supervision. And as I mentioned to the court before, this was the third time in about a year's time he was before the district court. He was out of options. And the fact that he wanted to stay on home confinement and continue to violate the district court's trust was not something the district court was willing to entertain in this case. No, but, you know, he has a number of equities in his favor that one might normally. For example, the assistance he provided and the very precarious position he put himself in to be a witness, his injury, he has a lot of things that one might look at. You say it's a reasonable sentence. Well, it just happens to be what the guideline, he gave him the guideline sentence. So normally if he had an explanation, that would be fine. The government, I take it, was extremely pleased with the level of his cooperation and what he went through, put himself through to help you all out. Certainly, Your Honor, when he was sentenced in the District of Hawaii and there was a motion for a reduction of sentence for substantial assistance, that was in 2012. By the time 2019 rolled around, the defendant had just a demonstrated history of disregard, despite multiple considerations being given to him for what the court describes as the mitigating circumstances. So he dissipated all the gratitude he had piled up with the government. Your Honor, not only had he done that, but I think the district court was at the end of its leash with the defendant. Again, the probation officer described the defendant as representing a danger to the community, as not amenable to supervision, as somebody who needed confinement. And for all of these reasons, even though he was the victim of a shooting, and we even allowed him to have a later, excuse me, surrender date because he had medical proceedings. But at no point in time did the district court think it was appropriate to allow the defendant to continue just to stay in his home and violate the terms and conditions of his supervision. You know what I'm wondering? It appears that this sentence could have been justified. But when we look at the record to see what the judge said, we don't find that he said anything. Does that pose any problem? Your Honor, again, the government's position is that the record as a whole supports the sentence that was imposed. And as this court has recognized, this court can infer the basis from the record. But if we go to the third element of the plain error review, prejudice, the defendant doesn't show any prejudice in this case. There's nothing the defense says that would have changed the sentence had the district court said more. And so for that reason, the government's position is... How do we know that? I mean, we could speculate. But, you know, maybe he should have had eight months or nine months or... And again, Your Honor, I think that's what the government's position is, that if you look at the record as a whole, the defense history and characteristics, his conduct in this case, and just his repeated violations, that a sentence at the high end of the guidelines range, which this court has recognized is generally reasonable under the circumstances, is fitting in this case. And unless the court has any other questions, I believe I'm out of time. Thank you. We have a short time for rebuttal. It's very easy to point out a list of violations or a number of violations without going into the volume of each one of them, which we're limited in time here. Probation did indicate he's a danger. Society didn't say why. What was he a danger to do? He hadn't committed violent crimes or serious crimes whatsoever. And then they recommend that, well, he's not amenable to supervision, so once he does his time, no supervision. These things fly in the face of one another. And in particular, when we look at a 5K1 situation, this was a young man who was placed in physical and significant emotional problems as a result of that. He shot in his car, and it's a violation that he was with a felon at the time. What it doesn't say, this is a felon who was looking to get a job because they're incredibly employable. They're loyal employees. He made a judgment that this was a guy who was going to be a good business decision. They set up a factory where he was going to do T-shirts. I know this. His mom is in court today. I know this because they bought a $100,000 machine to do this with. They were going to see the machine when some low individual comes up to the car and tries to kill him and kills the passenger at the time. The emotional trauma that results from that, having had many friends in the military go through things in the Vietnam era, I still have friends who wake up at night screaming because of what they went through in Vietnam. To know what this guy went through, to see the sort of things, the court should have listened to this. Thank you. What we're going to do is decide it on the record, and that's what we have to do. We put in for a motion to amend. The judge, the date was set. The judge took the date off calendar, and he's all good on this. Thank you. Thank you. Thank you both. That's all for your argument this morning. United States v. Jackson is submitted.
judges: Parker, Farris, McKeown